## Commonwealth v. Murray, Appellant.

Argued December 9, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Joseph F. Busacca,* with him *Mesirov, Gelman, Jaffe & Levin,* for appellant.

*Richard A. Devlin,* Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney, *Parker H. Wilson,* First Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 19, 1970:

Judgment of sentence affirmed, and the defendant is directed to appear in the court below at such time as she may be there called, and that she be by that court committed until she has complied with the sentence, or any part thereof which has not been performed at the time the appeal was made a supersedeas.

---

DISSENTING OPINION BY HOFFMAN, J.:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Montgomery County in which appellant Peggy Ann Murray was found guilty of burglary and larceny after trial by jury.

The facts of the case are set forth in the lower court opinion as follows:

"[D]efendants Murray and Rickanbach, in company with Mrs. Kathleen Mae Smith Smoluk, hereafter referred to as Smoluk, entered the apartment of

an elderly lady, Mrs. Ruth Hutchinson, of Haverford, Lower Merion Township, Montgomery County. Admittance was gained for the three by Murray, who, introducing herself as a 'Mrs. Malloy', informed Mrs. Hutchinson, the victim of this crime, that she, Murray, had recently been widowed and left to support three children. As a result of these circumstances, she said she had started into business for herself, purchasing old furniture and restoring it for resale. Mrs. Hutchinson was sympathetic and admitted the three women to her apartment.

"After some conversation, dominated by Murray, it became apparent that no business would be transacted between the parties. Then the three women, led by Murray, commenced in turn to visit the bathroom of Mrs. Hutchinson's apartment, a necessity precipitated, Mrs. Hutchinson was told [truthfully], by the fact that all three of these women were pregnant. To reach the bathroom in the apartment, a person is obliged to pass through Mrs. Hutchinson's bedroom. The bedroom and bathroom cannot be seen from the living room, the situs of the parties continuing conversation. While defendant Murray was absent, the other two women spoke with Mrs. Hutchinson. Likewise, when defendant Rickanbach was not present, the defendant, Murray, with Smoluk, occupied Mrs. Hutchinson's attention. Finally, Smoluk removed herself from the living room and the two defendants were left with Mrs. Hutchinson for the duration of the period of time which expired before Smoluk's return.

"At last the three left. Immediately thereafter Mrs. Hutchinson discovered that her wallet, containing, among other items, ten credit cards and some cash, was taken from her pocketbook which had been in the bedroom. Also a pair of library scissors were missing from the bedroom. Township police were immediately notified of the theft.

". . . [A] little more than a month after the incident complained of occurred, Smoluk was arrested in attempting to use one of Mrs. Hutchinson's stolen credit cards, a John Wanamaker Charge-a-plate. . . .

"At trial, Smoluk, after having plead guilty to receiving stolen goods, a matter of record which was pointed out to the jury . . ., appeared as a witness for the Commonwealth. She testified that the card was given to her by defendant Rickanbach. . . . Both defendants, Murray and Rickanbach, denied any wrongdoing."

When Mrs. Murray and Mrs. Rickanbach were arrested, the credit cards taken from Mrs. Hutchinson were not found.

Both Mrs. Murray and Mrs. Rickanbach were indicted on charges of conspiracy, burglary, larceny and receiving stolen goods. At trial, the charge of conspiracy was nolle prossed and the jury was directed to find a verdict of not guilty on the charge of receiving stolen goods. The jury then found both Mrs. Murray and Mrs. Rickanbach guilty of burglary and larceny as stated above.

The single issue of merit in this case is whether there was sufficient evidence to convict Mrs. Murray.

Mrs. Murray, together with Mrs. Rickanbach and Kathleen Smoluk, were present at the apartment together. Kathleen Smoluk said that, at some late date, she received the credit card from Mrs. Rickanbach. There is, however, no testimony which directly or indirectly connects Mrs. Murray with the theft or suggests that she was aware of it. Other than the fact that the three parties came to the apartment together, there was no evidence of conspiracy, motive or intent.

It is significant that the conspiracy indictment, which under the Commonwealth's theory would have seemed the most likely basis upon which to convict Mrs. Murray, was nolle prossed at trial for reasons

258

which are unclear on the record. Certainly, however, if the truth was as the lower court suggests it, a conviction for conspiracy would have been appropriate.

In summary, Mrs. Murray was convicted on the basis of circumstantial evidence. In considering such evidence: "The evidence submitted in support of the indictments was circumstantial and although this certainly is not fatal to the Commonwealth's case, the theme of guilt must flow from the facts and circumstances proved, and be consistent with them all. [Citation omitted.] The facts and circumstances must not only be consistent with and point to the guilt of the accused but they must be inconsistent with his innocence." *Commonwealth v. Nichols*, 206 Pa. Superior Ct. 352, 361-362, 213 A. 2d 105 (1965).

In this case, three women went to the home of the victim. The testimony of Kathleen Smoluk, the Commonwealth's own witness, suggests that she was not aware that the credit card had been stolen until she received it later from Mrs. Rickanbach. It is a reasonable inference, therefore, that Mrs. Murray similarly did not realize that the credit card had been stolen and Mrs. Rickanbach took it on her own. The facts, therefore, are equally consistent with innocence as well as guilt.

Under these circumstances, I would vacate the judgment of sentence and discharge the appellant.